UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARIM KOUBRITI,

      Plaintiff,

vs.

DEPUTY ROJO, et al.,

      Defendants.

_____/

Civil Action No.
05-CV-74343-DT

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER GRANTING SUMMARY JUDGMENT AS TO COUNT II**
**and**
**DENYING SUMMARY JUDGMENT AS TO COUNTS I, III, AND IV**

This matter is presently before the Court on Defendants' Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(c).  Karim Koubriti ("Plaintiff") alleges that several Wayne County sheriff's deputies mistreated him, while he was in confinement at the Wayne County Jail, because he is a Muslim.  Plaintiff claims that the deputies subjected him to unnecessary strip searches, served him pork, and placed him in a cell without any time for exercise or recreation.  The Defendants are six sheriff's deputies (Deputy Rojo and five unknown deputies) and Wayne County.  Defendants deny that any mistreatment occurred.

The Court has reviewed the Defendants' Motion for Summary Judgment, Plaintiff's Response, Defendants' Reply, and all evidentiary documents in this case.  Pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), the Court shall decide this motion without oral argument.  The Court will grant summary judgment as to Count II and deny summary judgment as to Counts I, III, and IV.  In addition, the Court will dismiss the "Five Unknown Deputies" included in the caption of Plaintiff's Complaint, for Plaintiff has failed to identify those defendants, even though discovery has been underway for months.  Moreover, Plaintiff makes no

indication of impending discovery regarding the identities of the deputies.

## I.    HISTORY OF THE CASE

### A.    FACTUAL BACKGROUND

On September 17, 2001, six days after the terrorist attacks against the United States on September 11, 2001, Plaintiff was arrested for document fraud.[1] (Defs.' Br. Supp. Mot. for Summ. J., 1; Pl.'s Br. Supp. Resp., 1.) Plaintiff was incarcerated and given a maximum-security classification. (Defs.' Br. Supp. Mot. for Summ. J., 2 and Ex. 1 at 11-12; Pl.'s Br. Supp. Resp., 2.) Plaintiff remained in custody from September 17, 2001, until his release in late 2004. (Order of Revocation of Detention Order, United States v. Koubriti, 01-CR-80778-DT, Dkt. No. 574.) Plaintiff spent most of his more than three years in custody at the Wayne County Jail. Specifically, Plaintiff was housed at the Wayne County Jail from September 2001 to August 2003, (Defs.' Br. Supp. Mot. for Summ. J., 2; Pl.'s Br. Supp. Resp., 2), and from November 2003 to July 2004. (Defs.' Br. Supp. Mot. for Summ. J., 2; Pl.'s Compl. ¶ 9.) During his time at the Wayne County Jail, Plaintiff alleges that he was repeatedly mistreated by Defendant Rojo and five unknown deputies.[2] (Pl.'s Compl. ¶ 9.) On the other hand, Defendants deny that any constitutional violations occurred.

### B.    PROCEDURAL HISTORY

---

[1]The indictment was later amended to include terrorism-related activities. Ultimately, the court dismissed the terrorism charge and ordered a new trial on the fraudulent document charges because of an apparent non-disclosure of exculpatory evidence. United States v. Koubriti, 01-CR-80778-DT.

[2]Although Plaintiff does not provide specific dates for all of the alleged mistreatment, he does allege that the misconduct happened during the "entire time" that he was incarcerated at the Wayne County Jail. (Pl.'s Resp., Ex. 1 at 19.)

2

Plaintiff filed his Complaint in November 2005.  Defendants filed an Answer.  On July 25, 2006, Defendants filed their Motion for Summary Judgment.  After obtaining an extension of time, Plaintiff filed his Response on September 13, 2006.  Defendants filed their Reply on September 22, 2006.

## II.   <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The United States Supreme Court has explained that Rule 56(c) "authorizes summary judgment 'only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . (and where) no genuine issue remains for trial . . . (for) the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try.'"  <u>Poller v. Columbia Broad. Sys., Inc.</u>, 368 U.S. 464, 467 (1962) (quoting <u>Sartor v. Arkansas Natural Gas Corp.</u>, 321 U.S. 620, 627 (1944)).  In other words, if there is a genuine dispute as to a material fact, then summary judgment should not be granted.

The party seeking summary judgment carries the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  When a court determines whether a genuine issue of material fact exists, the court must view the evidence "in the light most favorable to the opposing party."  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).  <u>See</u> <u>Bender v. Southland Corp.</u>, 749 F.2d 1205, 1210-11 (6th Cir. 1984) (stating "[t]he evidence and all reasonable inferences which may be drawn therefrom must be viewed in the light most favorable to the party opposing the summary judgment motion").  The

3

Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). See 60 Ivy St. Corp. v. R.C. Alexander, 822 F.2d 1432, 1435-36 (6th Cir. 1987) (stating "[t]he judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and not to judge the evidence and make findings of fact"). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. Thus, if a court finds that the evidence, when taken in a light most favorable to the non-moving party, presents a genuine question of material fact, then the court should deny the moving party's motion for summary judgment.

## III.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff's four-count Complaint is brought pursuant to 42 U.S.C. § 1983. After review, the Court will grant summary judgment as to Count II. The Court will deny summary judgment as to Counts I, III, and IV.

### A.    COUNT I—VIOLATIONS OF FIRST AND FOURTH AMENDMENTS (STRIP SEARCHES)

In the first count of his Complaint, Plaintiff alleges that he was repeatedly subjected to unwarranted and unreasonable strip searches that were conducted to humiliate him because he is a Muslim. (Pl.'s Compl. ¶ 18.) Plaintiff states that he was repeatedly "forced to strip completely naked in the basement of the jail upon returning from court while other, non-arabic inmates were allowed to remain in their underwear." (Id. ¶ 16.) Plaintiff further states that he was then "escorted straight to his cell and forced to strip full naked again." (Id. ¶ 17.) Plaintiff asserts that the strip searches were sometimes conducted by as many as six deputies at one time. (Pl.'s

4

Br. Supp. Resp., 10.)  Plaintiff argues that "searching an inmate repeatedly within minutes while handcuffed and under close supervision serves no constitutional purpose." (Id.)  He argues that the strip searches violated his First Amendment rights because he was targeted for being a Muslim.  He argues that the strip searches violated the Fourth Amendment because they were unreasonable.  On the other hand, Defendants assert that "Plaintiff was searched according to protocol set forth by the U.S. Marshals and only done upon entering or leaving the Wayne County Jail for court dates."  (Defs.' Mot. for Summ. J. ¶ 6.)

In Bell v. Wolfish, the United States Supreme Court held that the "Fourth Amendment prohibits only unreasonable searches" of "both convicted prisoners and pretrial detainees."  441 U.S. 520, 558 (1979).  In order to determine whether a search is reasonable, the Supreme Court stated that a balancing test should be used, in order to weigh a correctional facility's need for security and penological interests, with a pretrial detainee's or a prisoner's right, albeit diminished, to privacy.  The Supreme Court explained the balancing test as follows:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Bell, 441 U.S. at 559.  The Supreme Court further explained that the balancing test should not impinge on the federal courts' deference to prison administrators and their "wide range of 'judgment calls' that meet constitutional and statutory requirements."  Id. at 562.

Here, the Court finds that the full strip searches of Plaintiff could be reasonable.  Plaintiff was designated as a maximum-security inmate.  Plaintiff was a defendant in an incredibly high-profile, terrorism-related case.  Plaintiff was consistently traveling between the jail and federal

5

court for trial.  Thus, it seems reasonable that the deputies would conduct full strip searches for contraband after each time that Plaintiff had contact with people from outside the jail.  The Supreme Court has warned that a "detention facility is a unique place fraught with serious security dangers." Id. at 559.  And the Sixth Circuit has echoed such concerns, by stating that it is reasonable for officers to conduct "particularized searches where objective circumstances indicate such searches are needed to maintain institutional security." Masters v. Crouch, 872 F.2d 1248, 1253-54 (6th Cir. 1989).

However, Defendants do not seem to sufficiently articulate the penological interest that is served by the repeated strip searches of Plaintiff, especially when the allegations are taken in the light most favorable to Plaintiff.  Plaintiff alleges that he was ordered to strip completely naked, sometimes in front of six deputies.  Plaintiff further alleges that these strip searches took place both when he returned to the Wayne County Jail and then again when he returned to his cell minutes later, even though he was handcuffed and surrounded by law enforcement officers at all times.  Moreover, Plaintiff alleges that only the Arab inmates were forced to strip completely naked, while the non-Arab inmates were allowed to keep on their underwear.  The Court understands the purpose for a strip search when an inmate returns to the jail after having had contact with outsiders, but the Court does not understand the penological interest in forcing the inmate to again fully undress within minutes of the first search, especially when the inmate was handcuffed and surrounded by law enforcement officers.  Nor do Defendants offer any penological explanation or security purpose for the repeated strip searches.

The Court provides great deference to jail/prison administration and policies, especially to those procedures aimed at ensuring institutional security.  However, in this case, Defendants have provided no documentary evidence of an express policy.  The Court is left with

6

Defendants' repeated, bare-bones explanation that Plaintiff was merely "searched per policy and protocol." (Defs.' Br. Supp. Mot. for Summ. J., 2.) If Defendants had presented a written policy or set of procedures to the Court, the Court would have been able to assess whether the allegedly repeated strip searches of Plaintiff were merely the impartial execution of jail policy or a violation of Plaintiff's constitutional rights. For instance, such an express policy could show that each maximum-security inmate is fully searched upon entry into the jail and again when the inmate returns to his cell. In that case, the strip searches of Plaintiff would clearly comply with jail policy. In the case at hand, though, the Court is left to wonder whether *all* such inmates are ordered to repeatedly strip off all of their clothes, in front of several deputies, for examination. The Court wonders about the frequency, invasiveness and standards for such searches. Thus, when taken in the light most favorable to Plaintiff, a genuine issue of material fact exists as to whether the Defendants' strip searches violated Plaintiff's constitutional rights under the First and Fourth Amendments.

In addition, the Court is somewhat skeptical of Defendants' credibility, as the Court finds that Defendants have mischaracterized several portions of Plaintiff's deposition testimony. Defendants state: "Plaintiff acknowledges that Wayne County did not ever strip search him in front of any female guards or sheriff's deputies" in order to respect his Muslim faith. (Defs.' Br. Supp. Mot. for Summ. J., 3.) However, Plaintiff made no such acknowledgment. In reality, Plaintiff stated that the "female officer[s] never [were] present in the searches even for non-Muslim person[s]," regardless of their faith.[3] (Pl.'s Resp., Ex. 1 at 48.) Thus, Plaintiff's actual

---

[3]In fact, the Sixth Circuit has "recognized that a prison policy forcing prisoners to be searched by members of the opposite sex . . . would provide the basis of a claim on which relief could be granted." Mills v. City of Barbourville, 389 F.3d 568, 579 (6th Cir. 2004).

testimony was that the absence of female deputies had nothing to do with his religion.

Also, Defendants state that Plaintiff admitted, during his deposition, that "he was not 'targeted' for strip searches."  (Defs.' Br. Supp. Mot. for Summ. J., 8.)  This assertion is a blatant twisting of Plaintiff's words.  Plaintiff clearly expresses, throughout his entire deposition, that the deputies targeted him because of his Muslim religion.

In sum, there exists a genuine issue of material fact as to how the deputies conducted the strip searches.  When viewing the evidence in the light most favorable to Plaintiff, it appears that the deputies repeatedly conducted full-nude strip searches of Plaintiff, even though the hand-cuffed Plaintiff had been continuously supervised and surrounded by law enforcement officers on his way from the federal court and into the jail.  Such strip searches may be the policy of the Wayne County Jail, and if such is the case, summary judgment may be appropriate.  But here, Defendants have provided no evidence of any written policy or procedure regarding strip searches.  As such, a genuine issue of material fact exists as to the reasonableness of the strip searches.  Therefore, summary judgment will be denied as to Count I.

### B.    COUNT II—VIOLATION OF FIRST AMENDMENT (PORK PRODUCTS)

In the second count of his Complaint, Plaintiff alleges that he was deliberately served "pork in spite of the fact that he repeatedly informed Defendants that he was Muslim and not allowed to eat pork."  (Pl.'s Compl. ¶ 10.)  Plaintiff asserts that he knows he was served pork because he "got a headache and fever" after eating the meat.  (Pl.'s Resp., Ex. 1 at 22-23.)  Plaintiff asserts that he requested a special pork-free diet, but he was refused.  (Pl.'s Compl. ¶ 25.)  Plaintiff claims that such conduct violated his First Amendment right to freely exercise his religion.  (Id. ¶ 26.)

On the other hand, Defendants state that "Plaintiff was never fed pork products of any

8

kind as the Wayne County Jail has not served <u>any</u> pork product in more than a decade." (Defs.'
Mot. for Summ. J. ¶ 4.)  In fact, the Wayne County Jail's food service director stated, in an
attached affidavit, that the jail has "not served pork products in this facility for at least 13 years"
and that all meat products are "processed turkey or chicken or beef." (<u>Id.</u> Ex. 4 ¶¶ 5,7.)  The
food service director explains that the "reason none of our meats served in the jail contain pork is
because we have a high Muslim inmate population and we do this to accommodate them." (<u>Id.</u>
Ex. 4 ¶ 6.)

 Here, the Court finds that a genuine issue of fact exists as to whether the Wayne County
Jail serves pork products to inmates.  The Court has reviewed the jail's weekly menus.  The
menus show that the following items are served almost every Saturday for dinner: "Ham and
Cheese on Bun" and "3 oz. Sliced Ham." (Pl.'s Resp., Ex. 3.)  Furthermore, the inmates
occasionally receive "Ham Fried Rice" for dinner on Saturday night. (<u>Id.</u>)  In addition, the Court
has reviewed the jail's order forms for its vendors.  Some of the items consistently listed on the
vendor forms are: pork chops, ham, and pork (oval). (<u>Id.</u>)  Although Defendants insist that they
do not serve pork, their assertions seem to be in direct contradiction to their written menus and
vendor forms.

 In their Reply, Defendants seek to explain the contradiction by merely attaching a second
version of the food service director's affidavit.  In the affidavit, the food service director states
"[t]hat any meat product served at [t]his facility is processed turkey or chicken or beef, despite
once in a great while being called 'ham sandwich' or 'ham steak' or 'ham fried rice' which are in
actuality processed beef, turkey or chicken." (Defs.' Reply, Ex. 1 ¶ 3.)  First, the Court finds
that the director's characterization of "once in a great while" is off the mark, as the Court clearly
sees on the menu that "ham and cheese" sandwiches or "sliced ham" are served almost every

Saturday for dinner.  Second, Defendants do not explain why pork products are listed on its vendor forms.  In fact, Defendants merely re-attach the brief that was already submitted with their Motion for Summary Judgment.  The Court finds such a brief to be quite unhelpful, as the Court has already reviewed it.  It would have been more helpful for Defendants to provide additional evidence supporting their arguments or to more squarely address Plaintiff's allegations.  Thus, a genuine issue of fact arises as to whether pork products are served to the inmates.

That said, Plaintiff has no constitutional right to receive a pork-free diet.  Defendants are only required to provide a diet that is sufficient to keep the inmates in good health. See Cunningham v. Jones, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam).  Given that the "ham"—which may be processed beef or turkey—is only one part of the dinner on Saturdays, it seems that Plaintiff could have maintained his good health without violating his religious beliefs by only eating the non-ham products on that one night.  Plaintiff has not alleged that pork seasonings or pork derivatives are pervasive throughout the other meal items.  This is not a case where "pork" appears across the menu, as the "pork" products are only listed on one night of the week and are only one part of the dinner menu on that night.  Moreover, Plaintiff has produced no evidence that his nutritional needs are not being met.  Plaintiff has not alleged that he is malnourished.  He has merely alleged that he has a constitutional right to pork-free meals.  He does not.  In addition, much of Plaintiff's argument that Defendants served him pork is based on the fact that he got "a headache and fever" after he ate a certain meat item.  (Pl.'s Resp., Ex. 1 at 22-23.)  Such evidence seems incredibly speculative.  Thus, for these reasons, the Court will grant summary judgment as to Count II.

### C.      COUNT III—VIOLATION OF EIGHTH AMENDMENT

(MAXIMUM-SECURITY CONFINEMENT)

In the third count of his Complaint, Plaintiff alleges that he was confined to a "maximum security cell[] for 23 hours a day without opportunity for exercise or physical activity."  (Pl.'s Compl. ¶ 30.)  In addition, Plaintiff states that he was denied "fresh-air [sic]" and "sunlight." (Pl.'s Br. Supp. Resp., 5.)  Plaintiff claims that such confinement was unjustified and therefore violated his Eighth Amendment rights.  (Pl.'s Compl. ¶ 29.)  On the other hand, Defendants state that Plaintiff was not unconstitutionally confined and that "Plaintiff was always allowed his [daily] 1 hour of exercise."  (Defs.' Br. Supp. Mot. for Summ. J., 2.)

The Eighth Amendment prohibits "cruel and unusual punishments."  U.S. CONST. amend. VIII.  The United States Supreme Court has ruled that "[i]t is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[4]  Helling v. McKinney, 509 U.S. 25, 31 (1993).  When a plaintiff alleges that the conditions of his confinement constitute a constitutional violation, the plaintiff must satisfy both prongs of analysis under the Eighth Amendment.  The Sixth Circuit has explained:

> First, the deprivation alleged must be, objectively, sufficiently

-------

[4]Plaintiff was confined at the Wayne County Jail from September 2001 to August 2003, and from November 2003 to July 2004.  Plaintiff was convicted on June 3, 2003.  Thus, Plaintiff was both a pretrial detainee and a convicted prisoner during his period of confinement.  Plaintiff alleges that Defendants' misconduct occurred during both his pre- and post-conviction incarceration.

The Eighth Amendment is not applicable to pretrial detainees, as it provides constitutional protection against "cruel and unusual punishments" after "a formal adjudication of guilt."  Spencer, 449 F.3d at 727 (quotations omitted).  The "claims of pretrial detainees" should "rel[y] on the Due Process Clause rather than the Eighth Amendment."  Bell, 441 U.S. at 537 n.16.  Thus, in assessing whether there exists a factual dispute as to a possible Eighth Amendment violation in this case, the Court will consider only Defendants' conduct during Plaintiff's post-conviction confinement.

11

serious; a prison official's act or omission must result in the denial
of the minimal civilized measure of life's necessities.  Second, the
prison official's state of mind [must be] one of "deliberate
indifference"[5] to inmate health or safety.

Spencer v. Bouchard, 449 F.3d 721, 728 (6th Cir. 2006) (quotations and citations omitted).  In

other words, "[a]n Eighth Amendment claim comprises an objective and a subjective

component."  Rodgers v. Jabe, 43 F.3d 1082, 1086 (6th Cir. 1995).  Thus, summary judgment

should not be granted if the evidence, when viewed in the light most favorable to Plaintiff, shows

that prison officials committed a severe deprivation while possessing a culpable state of mind.

Id.

        The constitutional inquiry under the Eighth Amendment is fact-based.  A court must

conduct a case-by-case analysis in order to consider an individual prisoner's situation.  Some

facts to be considered are: "the size of the cell, opportunity for contact with other inmates, time

per day expended outside the cell, justifications for denial of the right to exercise, physical or

psychological injuries resulting from a lack of exercise or a particularized need for exercise."

Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983).  That said, the Sixth Circuit has held

that every prisoner is not entitled to the same amount of exercise per day, nor is there an across-

the-board constitutional minimum of daily exercise for prisoners.  Rodgers, 43 F.3d at 1086-88.

However, the Sixth Circuit has found that "[i]t is generally recognized that a total or near-total

deprivation of exercise or recreational opportunity, without penological justification, violates

---

        [5]The Sixth Circuit has explained that "[t]he deliberate-indifference requirement is
satisfied 'only if [the official] knows that inmates face a substantial risk of serious harm and
disregards that risk by failing to take reasonable measures to abate it.'  The Supreme Court has
explicitly acknowledged that 'a factfinder may conclude that a prison official knew of a
substantial risk from the very fact that the risk was obvious.'"  Spencer, 449 F.3d at 729 (quoting
Farmer v. Brennan, 511 U.S. 825, 842, 847 (1994)).

Eighth Amendment guarantees.  Inmates require regular exercise to maintain reasonably good physical and psychological health."  Patterson, 717 F.2d at 289.

Here, Plaintiff alleges a total deprivation of physical exercise and recreation.  Even if only considering his post-conviction incarceration, Plaintiff's allegations still cover a time period of almost one year.  As such, Plaintiff satisfies both the objective and subjective prongs of the Eighth Amendment analysis.  Although Defendants state that Plaintiff was not denied exercise, the facts must be taken in the light most favorable to Plaintiff.  First, the Court finds that such a long period of incarceration without recreation—even considering Plaintiff's maximum-security classification—is a sufficiently serious deprivation of one of life's basic necessities, physical exercise.  Second, the Court finds that the deputies possessed the requisite state of mind.  A reasonable deputy would have known that such a complete denial of all exercise or recreation was a substantial risk of harm to Plaintiff.  A reasonable deputy would surely have known that such treatment would seriously impair Plaintiff's physical and psychological health.  As such, the deputies displayed deliberate indifference.  Moreover, additional facts remain to be presented and developed, such as the size of Plaintiff's cell, the existence of any interaction with others, and so on.  Thus, there exists a factual dispute as to Plaintiff's confinement and his opportunity to exercise.  As such, the Court will deny summary judgment as to Count III.

### D.     COUNT IV—WAYNE COUNTY

The last count of Plaintiff's Complaint is directed at Defendant Wayne County.  Plaintiff asserts that the mistreatment by the sheriff's deputies were the result of Defendant Wayne County's customs, practices, and lack of training and supervision.  (Pl.'s Compl. ¶¶ 35-38.)

Municipal liability for constitutional deprivations can arise "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

13

may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978). A municipal government, though, cannot be held liable merely on the basis of a respondeat superior theory. Id. at 691. A government is only liable when the custom or policy is the "moving force" behind the deprivation of a plaintiff's constitutional rights. Id. at 694. Thus, the municipal government itself must be the *cause* of the constitutional violation.

Here, Plaintiff has provided sufficient proof of government liability. Plaintiff alleges that he was repeatedly and unreasonably strip searched, and that he was continuously denied any opportunity for exercise or recreation. Defendants themselves consistently state that their actions were done pursuant to policy and protocol. Thus, when the facts are taken in the light most favorable to Plaintiff, Defendant Wayne County was the moving force behind the deputies' repeated pattern of unconstitutional conduct. Therefore, Defendant Wayne County may be liable, and summary judgment will be denied as to Count IV.

## IV.   QUALIFIED IMMUNITY

Government officials, such as a sheriff's deputy, can be shielded from liability for their actions when those actions are done in the performance of their official duties. Thomas v. Whalen, 51 F.3d 1285, 1289 (6th Cir. 1995). In Saucier v. Katz, 533 U.S. 194 (2001), the United States Supreme Court laid out a two-prong test to determine whether a government actor is protected from liability by qualified immunity. The Sixth Circuit has directly described this two-part test as follows:

> The first prong is a threshold question, namely: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" If the answer is in the negative, then the inquiry ends. If a violation could be established, the second prong requires an examination of

14

> whether "the right was clearly established" at the time of the
> events at issue.  In order for the right to be clearly established,
> "[t]he contours of the right must be sufficiently clear that a
> reasonable official would understand that what he is doing violates
> that right."  The inquiry "must be undertaken in light of the
> specific context of the case, not as a broad general proposition."
> As the Court explained, "[t]he relevant dispositive inquiry in
> determining whether a right is clearly established is whether it
> would be clear to a reasonable officer that this conduct was
> unlawful in the situation he confronted."

Weaver v. Shadoan, 340 F.3d 398, 406-07 (6th Cir. 2003) (quoting Saucier, 533 U.S. at 201-02)

(citations omitted).

Here, the deputies are not entitled to qualified immunity.  The factual allegations, when

taken in the light most favorable to Plaintiff, show that the deputies violated Plaintiff's

constitutional rights to be free from unreasonable searches and from cruel and unusual

punishment.  At the time of the events, Plaintiff's constitutional rights were clearly established.

It would have been sufficiently clear to a reasonable deputy that his conduct, as is alleged here

by Plaintiff, was a violation of Plaintiff's rights.  Thus, Defendants are not protected by qualified

immunity.


## V.   PRISON LITIGATION REFORM ACT ("PLRA"), 42 U.S.C. § 1997e

Defendants argue that Plaintiff's lawsuit is barred by 42 U.S.C. § 1997e.  Section 1997e

states: "No action shall be brought with respect to prison conditions under section 1983 of this

title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a)

(2003).  Defendants assert that Plaintiff did not properly exhaust all of his grievances before he

filed the cause of action at hand.

Here, the PLRA does not bar Plaintiff's lawsuit.  Section 1997e pertains to prisoners.

The plain language of Section 1997e states that "[n]o action shall be brought . . . by a *prisoner*

*confined* in any jail, prison, or other correctional facility."  At the time that he filed his

Complaint, Plaintiff was neither a "prisoner" nor was he "confined."  Moreover, Section 1997e

further defines a "prisoner" as "any person incarcerated or detained in any facility."  Id. §

1997e(h).  Again, such plain language does not apply to Plaintiff, as he was no longer

incarcerated or detained when he filed his Complaint.  As such, Section 1997e does not apply to

Plaintiff, and his Complaint is not barred.

## VI.    CONCLUSION

Based upon the record established and documentary evidence presented, the Court finds

that genuine issues of material fact exist.  Therefore, for the reasons stated above, the Court will

deny summary judgment as to Counts I, III, and IV.  However, the Court will grant summary

judgment as to Count II.  Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment is granted as

to Count II.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is

denied as to Counts I, III, and IV.

IT IS FURTHER ORDERED that the "Five Unknown Deputies" are dismissed as

Defendants.

16

_s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: January 3, 2007
        Detroit, Michigan

I hereby certify that a copy of the foregoing document
was served this date upon counsel of record
electronically and/or via first-class mail.

_____/s/ Patricia Foster Hommel_____
        Patricia Foster Hommel
        Secretary to Chief Judge Friedman

17